James MARTIN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–0811–CR–681.

Court of Appeals of Indiana.

June 19, 2009.

Timothy J. Burns, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

James Martin appeals his conviction for Class B misdemeanor disorderly conduct. We affirm.

## Issue

The sole issue before us is whether there is sufficient evidence to support Martin's conviction.

## Facts

The evidence most favorable to Martin's conviction is that on August 5, 2008, at about 5:30 a.m., Martin was placed in a holding cell at the Duvall Work Release Center in Indianapolis after he had an altercation with an officer at the facility. Martin was placed in the cell while officers waited for an arrest warrant for him to arrive. He was handcuffed by one arm to a bench, and officers checked with him every hour to see if he needed to use the restroom. However, at some point in the morning Martin defecated in the holding cell. Later, around 2:00 p.m., Martin was taken to the restroom per his request.

At noon, Major Anthony Dickerson arrived to work at the facility and was advised of Martin's situation. From his desk approximately forty yards away from the holding cell, Major Dickerson could hear Martin beating on the walls, making loud noises, and yelling "Let me go. Uncuff me. I want to be out. I want to be free." Tr. p. 11. Major Dickerson went to the cell and told Martin to quiet down. However, Martin continued beating on the walls, yelling, and making loud noises. He also stated that he needed his medication, but Major Dickerson could find no record that Martin took any medication.

Another officer arrived at the facility around 3:00 p.m. and again told Martin to quiet down, but he did not do so. Finally, at about 4:00 p.m., Martin was arrested for disorderly conduct and removed from the facility. After a bench trial held on October 8, 2008, Martin was found guilty as charged. He now appeals.

## Analysis

■ When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind.2007). It is the fact-finder's role, not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* When confronted with conflicting evidence, we must consider it in a light most favorable to the conviction. *Id.* We will affirm the conviction unless no reasonable fact-finder could have found the elements of the crime proven beyond a reasonable doubt. *Id.*

■ As charged here, the State was required to prove that Martin recklessly, knowingly, or intentionally made unreasonable noise and continued to do so after being asked to stop. *See* Ind.Code § 35–45–1–3(a)(2). Additionally, we must employ a two-part analysis to determine whether the State has violated the free speech protections found in Article 1, Section 9 of the Indiana Constitution. *Blackman v. State*, 868 N.E.2d 579, 584 (Ind.Ct. App.2007), *trans. denied.* "First, we must determine whether state action has restricted a claimant's expressive activity; second, if it has, we must decide whether the restricted activity constituted an 'abuse' of the right to speak." *Id.* at 584–85.

The State asserts that Martin's arrest and conviction for disorderly conduct was not, in large part, a restriction on his expressive activity, because his banging on the cell walls and make noises other than speech did not constitute such activity. We need not address that issue; even if we were to include Martin's banging and yelling of other than actual words as "expressive activity" that the State restricted,

there is sufficient evidence that he abused his right to speak.

 Generally, we review the State's determination that a defendant's expression was an abuse of the right of free speech under the Indiana Constitution only for whether that determination was rational. *Id.* at 585. If, however, the expressive activity was political in nature, the State must demonstrate that it did not materially burden the defendant's opportunity to engage in political expression. *Id.* "Expressive activity is political if its aim is to comment on government action, including criticism of an official acting under color of law." *Id.* If an individual's expression focuses on the conduct of a private party, including the speaker himself, it is not political. *Id.* In the context of confrontations with police officers, a speaker's defense of his or her own conduct generally is not political. *Shoultz v. State*, 735 N.E.2d 818, 826 (Ind.Ct.App.2000), *trans. denied.*

 The defendant bears the burden of proving that the expressive activity was political; if the expression is ambiguous, we must find that the expression was not political and must review the State's restriction of the expression under standard rational basis review. *Blackman*, 868 N.E.2d at 585. If a defendant successfully demonstrates that his or her speech was political, the burden shifts to the State to show that it did not materially burden the defendant's opportunity to engage in political expression. *Id.* The State can do so by producing evidence that the expression inflicted particularized harm analogous to tortious injury on readily identifiable private interests, or in other words that the expression caused actual discomfort to persons of ordinary sensibilities or that it interfered with an individual's comfortable enjoyment of his or her privacy. *Id.* "Evi-

dence of mere annoyance or inconvenience is not sufficient." *Id.*

It is unclear to us that Martin's tirade was political in nature. It was rooted in the fact that he had violated a rule of the work release facility and, therefore, was being detained while there was a delay in obtaining a warrant for his arrest for that violation. His protesting of his confinement appears to be related to his own conduct, which would not constitute "political" speech. Moreover, Martin's claims that he was merely seeking permission to use the restroom or to take medication conflicts with the evidence most favorable to the State; namely, guards checked with Martin hourly to see if he needed to use the restroom, he was allowed to use the restroom at 2:00 p.m. when he requested to, and there was no record that Martin was on any medication. At best, it is ambiguous whether Martin's tirade was political, and under a rational basis standard of review there is abundant evidence that the tirade constituted an abuse of Martin's right of free speech.

Even if Martin's tirade could be construed as political, we would still conclude that his conviction for disorderly conduct is constitutionally sound. Martin essentially contends his noise was not unreasonably loud for the circumstances he was in, i.e. in a holding cell in a work release facility. This case is similar in many ways to *J.D. v. State*, 859 N.E.2d 341 (Ind.2007). There, a juvenile residing in a guardian's home loudly and repeatedly "over-talked" a deputy sheriff who was trying to discuss behavioral issues with the juvenile. Distinguishing *Price v. State*, 622 N.E.2d 954 (Ind.1993), the court held that the juvenile's "persistent loud yelling" and "alleged political speech" had interfered with the officer's performance of her duties, thus rising above the level of a mere fleeting annoyance and constituting an abuse of the

juvenile's free speech rights. *J.D.*, 859 N.E.2d at 344. Thus, the court affirmed the juvenile's delinquency adjudication for disorderly conduct. *Id.*

█ Here, there was testimony establishing that Martin created unreasonable noise in the work release facility for at least four virtually continuous hours. Employees at the facility clearly were disturbed by this conduct, which it is reasonable to infer went well beyond the normal sounds one would hear in such a facility. Major Dickerson could hear Martin's tirade at his desk forty yards away from the holding cell, which had a solid steel door with a glass window. Major Dickerson and one other employee had to interrupt their regular duties to address Martin's situation. Clearly, even if Martin's speech was "political" his disturbance was more than a mere fleeting annoyance and it interfered with the duties of the facility's employees. This was sufficient evidence to establish that Martin abused his free speech rights under the Indiana Constitution. Even if one is engaging in protected political speech, this "does not obviate one's responsibility to act in a civilly responsible manner." *Blackman,* 868 N.E.2d at 588. Martin did not act in such a manner.

## Conclusion

There is sufficient evidence to support Martin's conviction for disorderly conduct, and that conviction does not violate Article 1, Section 9 of the Indiana Constitution. We affirm.

Affirmed.

BAKER, C.J., and MAY, J., concur.